Cheshire, }
Dec., 1895. }

## THE KEENE ELECTRIC RAILWAY COMPANY'S PETITION.

The provisions of the statute (Laws 1895, c. 27) which vest with the court the determination of the questions whether the public good requires a proposed street railway and its construction on a proposed route, relate solely to corporations sought to be created under the general law.

Under the statute, the court have no authority to determine whether the public good requires the construction and operation of a street railway along a particular route, by a company duly chartered by the legislature, when no part of the proposed line is an extension of the railway authorized by the act of incorporation.

Street railway corporations created by legislative enactment prior to Laws 1895, c. 27, are not required to secure reincorporation under the general law.

PETITION, for the determination of the question whether the public good requires that the petitioners' railway shall be built upon a proposed route specifically described. The petitioners were incorporated by act of the legislature, March 31, 1893 (Laws 1893, c. 274).

*Charles H. Hersey* and *Batchelder & Faulkner*, for the plaintiffs.

PARSONS, J. The petition alleges that the plaintiffs are duly incorporated by grant from the legislature, and that they are desirous of laying tracks and operating a railway upon certain streets and highways in Keene and Swanzey specifically set out in the petition. No part of this route is an extension of the railway which by their act of incorporation the plaintiffs were authorized to build, but the whole is included within the more general terms of the act. Laws 1893, c. 274, s. 1. Claiming organization and authority under special grant from the legislature, the plaintiffs ask only for a determination of the question whether the public good requires that their railway shall be built upon a certain route.

Railroads " can be laid out, built, maintained, and put in operation only by virtue of express grants of the legislature, or of authority derived from the legislature." P. S., c. 157, s. 2. No authority has been conferred upon the court by the legislature to determine the question raised by the proposal of a corporation, duly chartered by the legislature, to build upon a particular route, unless an extension beyond the authorization of the charter is proposed. P. S., c. 156, ss. 18–20; Laws 1895, c. 27, s. 3.

The petition must be dismissed for want of jurisdiction. The only ground upon which it is suggested that such authority has been given the court is that such power is conferred by s. 3, c. 27 of the Laws of 1895. This section provides for the creation and organization of street railway corporations by general law. By its provisions, such corporations " may be created and organized in the mode prescribed in sections 1 to 20, inclusive, of chapter 156 of the Public Statutes, . . . and the question whether the public good requires the proposed street railway, and whether the public good requires that it shall be built on the proposed route, which shall be specifically set forth in the petition to the court, shall be determined in the manner provided in sections 8 to 13, inclusive, of said chapter 156." The additional requirement of an adjudication of the question of public good with reference to the particular route of the proposed railway, as well as to the railway generally, is a modification of the provisions of c. 156, P. S. A favorable determination of both questions is made essential in the case of street railways, to enable the provisional corporation to become incorporated by completion of the formal steps prescribed by s. 14, c. 156, P. S.

The decisive point in the present inquiry is, that the determination of this question as to the particular route is vested with the court only as one of the steps in the formation of a corporation by general law. It is only a " provisional corporation " which can have any purpose in bringing, or which is authorized to bring, such a petition. P. S., c. 156, s. 8. Assuming that the plaintiffs are incorporated as alleged, the determination of the question one way or the other in the present proceeding can neither help or harm them, add to or subtract from their rights, or make them more or less a corporation. If the plaintiffs are not a corporation with authority to build over the particular route, the general question of public good is not submitted. The petition under the statute cannot be maintained except both questions are put in issue.

Although a strict construction of the pleadings does not raise the question of the plaintiffs' incorporate existence and right to construct and maintain the railway described in their charter, yet if these rights were non-existent, the objection to the maintenance of the petition on this ground might be avoided by amendment. The questions, whether the public good requires the proposed railway, and whether it should be built upon the proposed route, if presented together, would present an issue which the statute authorizes the court to adjudicate. We think, however, that the plaintiffs' claim of authority still existing by virtue of their charter is well founded. By section 1 of the act, they are made a body corporate " with power to construct, main-

tain, and use . . . a railway, . . . over, along, and upon such highways, bridges, and lands in Keene . . . as may be necessary for the public accommodation, with the privilege . . . of extending the same" over certain highways in Swanzey. So far as appears, the corporate existence so established and the right so granted remain unless all prior street railway charters were abolished by c. 27 of the Laws of 1895, " an act in relation to the incorporation, organization, and regulation of street railway companies."' It would hardly be presumed it was intended to repeal all prior incorporating acts, and abolish the corporate existence of street railways constructed and in operation; but the act makes no distinction between incorporated companies whose lines were built and those which were unbuilt. The first section provides that " street railway companies shall have the powers and privileges, and be subject to the duties, liabilities, restrictions, and provisions contained in this chapter, which, so far as inconsistent with charters and amendments heretofore granted, shall be deemed to be an alteration and amendment thereof." From this it is clear that only alteration and amendment, not repeal, was intended; but to remove all doubt, the section continues, " all such companies specially chartered shall continue to exercise and enjoy the powers and privileges granted by their respective charters .. . . except so far as said powers, privileges, and liabilities are modified and controlled by the provisions of this chapter." The corporate existence of all street railways previously chartered, whether built or unbuilt, is untouched by the act. They therefore cannot be required and there is no occasion for them to proceed to secure reincorporation under general law. Neither are their granted rights and privileges modified, nor are new liabilities imposed upon them by provisions relating solely to the formation of new corporations. The question of public exigency, once decided by legislative action, was not intended to be again determined through judicial procedure. To what extent the provisions of the plaintiffs' charter for the location, construction, and operation of the railway itself and the financial management of the corporation are controlled, modified, or repealed by the general provisions upon those subjects in the act of 1895, are questions not considered. Our conclusion is placed solely upon the ground that provisions designed to control the formation of such corporations under general law are not limitations upon the powers of corporations already established by direct grant.

*Petition dismissed.*

All concurred.