Hillsborough, }
  Dec., 1897. }

### PETITION OF THE NASHUA STREET RAILWAY.

The statute (Laws 1895, *c.* 27) providing for the creation of street railway corporations does not vest with the court the determination of the question whether the public good requires the extension of a street railway upon a particular route, within its authorized limits, by a company incorporated by the legislature, and is not amendatory of outstanding charters which provide for the laying out of such railways by tribunals named therein.

PETITION, under chapter 27, Laws 1895, for a determination of the question whether the public good requires the building of an extension of the petitioner's railway in Nashua from its present terminus on Main street, southerly on that street and the Lowell road to the Massachusetts line. The petitioner was incorporated by an act of the legislature August 14, 1885 (Laws 1885, *c.* 192); and was empowered to construct, maintain, and use a railway over such of the streets, highways, and lands in Nashua "as may be necessary to accommodate the public travel and transportation on the same, and as said grantees at their first meeting and from time to time thereafter shall determine." The amendments of the charter are a part of the case.

*George B. French*, for the petitioner.

*Charles J. Hamblett*, for landowners.

*Isaac W. Smith*, by leave of court, for the Portsmouth Horse Railroad Company and the Exeter Street Railway Company.

*John S. H. Frink, Calvin Page*, and *Frank S. Streeter*, by leave of court, for the Portsmouth & Dover Railroad, the Boston & Maine Railroad, and Frank Jones.

CHASE, J. Any five or more persons of lawful age may associate together by an agreement in writing to form a corporation for the carrying on of any lawful business, with certain exceptions, among which is the construction and maintenance of railroads. P. S., *c.* 147, *s.* 1. They become a corporation by force of their own acts in making the agreement, causing it to be recorded, and paying the required charter fee. *Ib., s.* 4. The law assumes that there is public necessity for all corporations of this kind that people see fit to form.

To create a corporation for the construction and maintenance of a steam railroad, twenty-five or more persons must be parties to the agreement, and they must obtain a decision of the court that the public good requires the proposed railroad. P. S., c. 156, ss. 1-18. In the granting of special charters for this purpose, the question of public necessity is determined by the legislature, but as this is impracticable in a general law, it is referred to the court. The question is a fundamental one, without a favorable determination of which the corporation cannot be formed. The route of the proposed railroad need not be particularly described in the agreement. It is sufficient to set forth its termini, its length as nearly as may be, and the names of the towns and counties through or into which it will extend. Ib., s. 2. The description of routes in special charters is also general. For examples, see Laws 1883, cc. 193, 214, 218, 227, 229, 232, 244, 250. Hence, in all cases the road must be laid out after the corporation has been created; and procedure for the purpose is provided by chapter 158 of the Public Statutes. The laying out is a subsidiary matter that arises after incorporation, in the use of the corporate franchise.

The same method is adopted for the formation of corporations for the construction and maintenance of street railways, with the modification that the route of the proposed railway must be specifically set forth in the petition to the court, and the petitioners must obtain a decision that the public good requires a railway to be built upon that route. Laws 1895, c. 27, s. 3. Consequently, upon the formation of the corporation the route of its railway is definitely fixed or laid out. The decision of the fundamental question of public necessity for the corporation includes a decision of the subsidiary question relating to the laying out of the road. The only matter left undetermined is the location of the tracks within the limits of the highways in the specified route. In charters specially granted the routes of the proposed railways are more or less indefinite. Laws 1864, c. 3030, s. 1; 1870, c. 61, s. 1; 1871, c. 86, s. 1; 1878, c. 118, s. 1; 1881, c. 251, s. 1; 1883, c. 255, s. 1; 1885, c. 192, s. 1; 1887, c. 211, s. 1; Ib., c. 219, s. 1; Ib., c. 271, s. 1; Ib., c. 274, s. 1; 1889, c. 178, s. 1; Ib., c. 218, s. 1; Ib., c. 241, s. 1; 1891, c. 293, s. 1; 1893, c. 249, s. 1; Ib., c. 250, s. 1; Ib., c. 274, s. 1. The petitioner's charter is a fair sample. It grants to the petitioner, "power to construct, maintain, and use a railway . . . over, along, and upon such of the streets, highways, bridges, and lands in the city of Nashua . . . as may be necessary to accommodate the public travel and transportation on the same, and as said grantees at their first meeting and from time to time thereafter shall determine." In these cases, as in the case of steam railroad corporations, it was necessary that means should be provided for making the routes definite (Con-

*cord* v. *Horse Railroad*, 65 N. H. 30); and so in all the charters except the three last granted, it is provided that the roads shall be laid out by the selectmen of the towns in which they are located, in like manner as highways are laid out. In one of the three excepted cases, the consent of the railroad commissioners to the location must be obtained in addition to such laying out, and in the other two cases the corporation is authorized to make the location after obtaining the consent of the railroad commissioners thereto, without the intervention of the selectmen or any other tribunal. The charters also provide that the selectmen shall locate the tracks within the highway limits. The rights and privileges of these corporations are more general or comprehensive than those of corporations formed under the general law. The questions submitted to the selectmen or railroad commissioners arise when the corporations attempt to define their rights. They are subsidiary in character, not fundamental.

The question before the court is whether the legislature, by the act of 1895, intended to amend all outstanding charters, by substituting the court for the selectmen as the tribunal to decide this subsidiary question. It has already been seen that a particular duty is assigned to the court in the formation of railroad corporations (both steam and street) under the general law, namely, the legislative duty of determining the fundamental question whether the public good requires the corporation. No other duty was assigned to the court in the formation of steam railroad corporations. The performance of the duty in respect to street railway corporations necessarily lays out the route of the proposed railway because of the definiteness required in the course of the proceedings. The laying out is an incident to the determination of the fundamental question.

It is not provided in the act, in so many words, that the court shall lay out the roads of existing corporations. The allegation that such was the intent of the legislature is based wholly upon a parenthetical clause contained in section 5. The section relates to the location of railways within the highway limits after they have been laid out. Its first sentence provides that "all . . . . street railways occupying any portion of a public highway or street shall be located thereon," etc.,— implying that a right to occupy some portion of the highway or street has already been acquired. The right is acquired in the case of voluntary corporations by the fact of incorporation, and in the case of other corporations, by the laying out in accordance with their charters. The next sentence of the section provides that the mayor and aldermen or the selectmen, as the case may be, " after the determination, as herein provided, that the public good requires the building of the proposed railway on the proposed route " (the clause referred to), may make the location, and prescribes the

procedure for so doing.    If the words " as herein provided " had been omitted, the clause would have no weight in supporting the allegation of those who favor the petition.    A laying out of the proposed route by selectmen would then answer the terms of the clause as literally and fully as a laying out by the court.    But it is alleged that these words disclose an intent that the laying out in all cases shall be done by the court.    The provisions referred to by them are contained in section 3, and relate to the formation of new corporations and the authorization of the building of extensions and branches by existing corporations.    They have no application whatever to the laying out of the authorized roads of specially chartered corporations.    But it is argued that the reference is to the agency or tribunal appointed by section 3 for determining such questions, and not to the question itself.    The argument loses its force when it is considered that the only duty there imposed upon the court is to determine the fundamental question whether there is public necessity for forming a new corporation or granting additional franchises to an old one, and that, in performing the duty, the laying out of the road is accomplished only incidentally by virtue of the requirement that the route of the proposed railway shall be definite.    In section 3, two questions are stated : (1) Whether the public good requires the proposed railway, and (2) whether it requires the railway to be built upon the proposed route.    The single question stated in the clause, whether " the public good requires the building of the proposed railway on the proposed route," includes the substance of the two questions.    If the construction given to the clause by the petitioner were adopted, the road of a specially chartered corporation could not be located until after a favorable determination by the court of the first, as well as the second, of these questions.    But that question was decided by the legislature when the corporation's charter was granted, and no one asserts that the legislature intended to require another decision.

The fact that the questions in both sections are the same in substance is evidence that they were designed to apply to the same cases.    All agree that the cases in mind in section 3 were the forming of new corporations and the authorizing of old corporations to build extensions and branches.    Every word of the clause is given its usual significance if the clause is limited in its application to the same cases, and no conflict with other provisions of the act is produced.    Its office is to specify the order in which the steps are to be taken.    The fact that it is in the midst of provisions relating to corporations generally has some weight against this view; but there would be greater incongruity of position and connection if the view advanced in behalf of the petitioner was correct.    The improbability that the legislature would use such obscure language, in such incongruous connec-

tion, to amend twenty or more charters to the extent suggested, is much greater than that of the view above taken.

The petitioner's charter, as originally granted, gave the corporation the right to build a street railway in Nashua only. It was amended in 1887 by giving the corporation the right to build in Hudson also, but no provision was made for laying out the new road. Laws 1887, *c.* 231. It was again amended, February 26, 1895, by limiting the Hudson right to highways leading toward Tyngsborough and Dracut, and by providing that the railway in Hudson should be laid out by the selectmen of the town in like manner as highways are laid out. Laws 1895, *c.* 189. The time when this act should take effect was not specified, but by the act of March 26, 1895, it was provided that it should take effect on that day. Laws 1895, *c.* 244. This was thirteen days after the passage of chapter 27 of the laws of that session. If the legislature had intended by this chapter to provide that the railways of all corporations, whenever and however created, should be laid out by the court, there would have been no occasion for the special provision for the laying out of the petitioner's railway in Hudson. This is direct evidence, of much weight, tending to show that the legislature did not intend, by chapter 27, Laws 1895, to amend the charters of existing corporations in the particulars alleged.

It was held in *Keene Electric Railway Company's Petition,* 68 N. H. 434, that the charter of that company was not amended in this respect by the general law under consideration. Upon a further consideration of the question, the decision is affirmed and followed.

*Petition dismissed.*

All concurred.