Strafford,
Feb. 5, 1903.

### LENOIX, ADM'R, v. DOVER, SOMERSWORTH & ROCHESTER STREET RAILWAY CO. & a.

Where a special charter provides that the route of a street railway shall be determined "in like manner as highways are laid out," a general location by a city council, unaccompanied by the record required by section 4, chapter 45, Public Statutes, does not authorize an occupation of the highway by the corporation for purposes of construction.

Proceedings for the location of a street railway under section 5, chapter 27, Laws 1895, are subject to the provisions of section 4, chapter 45, Public Statutes, as to written decision and a record thereof.

CASE, for personal injuries resulting in the death of the plaintiff's intestate. Facts agreed, and case transferred from the September term, 1902, of the superior court by *Young*, J.

June 22, 1901, as the plaintiff's intestate was driving along a highway in Rochester, the horse became frightened at a reel of wire which had been left beside and within the highway by one Kendall, who had the contract for constructing certain overhead work which the Massachusetts Construction Company was building for the defendant street railway. Kendall and the Construction Company were made parties defendant.

The street railway was incorporated by the legislature (Laws 1889, c. 178) and duly organized. The records of the city of Rochester show that the following steps were taken toward the laying out of the road:

A petition asking that the tracks, poles, lines, wires, etc., of the railway "be located, and the grade of said tracks be determined and fixed as required by the charter of said company and the statutes of said state," was presented to the mayor and city council. The required notice was given, and on the return day of the petition the mayor and city council took a view of the proposed route. The hearing was continued until February 11, 1901, when action was taken, as appears by the following record of the council meeting: "The hearing on the petition of the Rochester Street Railway Company being in order, L. P. Snow, in behalf of the company, made a brief statement as to the proposed route and side of the street to be occupied, and called Engineer Springfield and President Lovell, who were sworn and testified as to the proposed route, material to be used, etc. On motion of Councilman Wallace, voted a general location as shown by engineer's plan be granted the street railway company. On motion of Councilman

Meader, voted the committee on roads, bridges, and drains have general supervision of the layout of the road, and report to the council at the regular meeting in March." The hearing on the petition for the lay-out of the railway was continued from time to time while the road was being built, until December 10, 1901, when a lay-out giving a detailed description of the tracks and poles of the company as they then existed on the ground was duly drawn, signed, filed, and recorded in the city records.

Subject to exception, the court ordered a nonsuit as to the street railway and the Massachusetts Construction Company. If the location of the street railway was sufficient against the plaintiff to authorize the work to be done in the highway, including the erection of poles and the stringing of wires as Kendall was doing, there is to be judgment for those defendants; otherwise the nonsuit is to be stricken off.

*Felker & Gunnison* and *George E. Cochrane*, for the plaintiff.

*Leslie P. Snow*, for the defendants.

REMICK, J. Before the defendant railway company could rightfully occupy the street with their works, they were bound to secure a determination by the proper authority of the following questions: (1) Whether the public good required the construction of the proposed railway; (2) whether the public good required its construction over this particular street; and (3) where upon the street the public good required the track, poles, wires, and other appliances to be located. Laws 1889, *c.* 178, *s.* 2; Laws 1895, *c.* 27, *ss.* 3, 5; *Petition of Nashua Street Railway*, 69 N. H. 275, 276, 278.

That the public good required the construction of the railway, "was decided by the legislature when the corporation's charter was granted." *Petition of Nashua Street Railway*, 69 N. H. 275, 278. Whether the public good required the construction of the railway upon the street in question, rather than over some other route, and if so, where upon the street, were questions which the charter of the defendant railway company in express terms referred to the selectmen of Rochester, to be by them inquired of and determined, "in like manner as highways are laid out." Laws 1889, *c.* 178, *s.* 2; *Petition of Nashua Street Railway*, 69 N. H. 275.

Had the selectmen or corresponding municipal authority of Rochester, at the time of the plaintiff's injury, determined "in like manner as highways are laid out," that the public good required the construction of the railway upon the street in question, and where therein it should be located? Section 1, chapter 45, Public

Statutes, provides: "On petition to the selectmen for the laying out or altering of highways, or for laying out lands for any public use, and generally for the purpose of deciding any question affecting the conflicting rights or claims of different persons, their proceedings shall be governed by the following rules." Sections 2 and 3 relate to notice; and as the notice in the present case is not questioned, they are immaterial. Section 4 provides: "They [the selectmen] shall make their decision in writing, and cause the petition, order of notice, evidence of service, and their decision to be filed in the town clerk's office and recorded at length upon the town records; and their decision shall be of no force or effect until the same is done." At the time of the plaintiff's injury, the foregoing provision had not been complied with. If it could be said, upon the findings, that the vote of February 11, 1901, was a "decision in writing" that the public good required the construction of the railroad over the street in question, and that the minutes of the meeting of the city council were a record thereof sufficient to answer the requirements of the statute, by no stretch could it be said that the vote of that date was a determination of the question of particular location. The vote in terms grants nothing more than a "general location," while the subsequent votes and conduct of the city council show conclusively that there was no location or record thereof, within the meaning of the statute, until December 10, 1901, long after the plaintiff was injured. The action of February 11, 1901, did not, therefore, authorize occupation of the street by the defendants for the purpose alleged.

It is urged that the charter provision requiring that the "railroad shall be laid out by the selectmen of said Rochester in like manner as highways are laid out" was repealed by chapter 27, Laws 1895. By the express terms of that act, charters theretofore granted were altered and amended only so far as inconsistent therewith. *Petition of Nashua Street Railway*, 69 N. H. 275; *Petition of Keene Electric Railway*, 68 N. H. 434. Whatever inconsistency there may be between the provisions of that chapter and other provisions relating to the laying out of highways, we discover no inconsistency between anything in that chapter and the particular provision of the highway law: that until a decision and record, in accordance with section 4, chapter 45, Public Statutes, all steps in the laying out of a highway are without force or effect. If there had been nothing in the charter making the proceedings for location subject to that provision, and the proceedings had been under section 5, chapter 27, Laws 1895, exclusively, still they would have been subject to that provision by virtue of section 1, chapter 45, Public Statutes.

The sweeping terms of the statute leave the court no liberty to

regard the general considerations urged by the defendants. The statute compels the conclusion that at the time of the plaintiff's injury the defendants' occupation of the street for the purpose alleged was unauthorized.

*Nonsuit stricken off.*

CHASE, J., was absent: the others concurred.